**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANTOS ZAVALA,<br>Petitioner, | : | |
| v. | : | No. 2:26-cv-7310 |
| JOHN RIFE, *et al.*,<br>Respondents. | : | |

**OPINION**
**Amended Petition for Writ of Habeas Corpus, ECF No. 8 – Dismissed and Denied**

**Joseph F. Leeson, Jr.** **November 19, 2026**
**United States District Judge**

## I. INTRODUCTION

Petitioner Santos Zavala filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 based on his detention on a final removal order. He was subsequently released, but required to enroll in the Intensive Supervision Appearance Program ("ISAP"). Zavala filed an Amended Habeas Petition arguing that the restrictions of ISAP render him "in custody" for purposes of the habeas statute and amount to unlawful detention under the statute governing Temporary Protected Status ("TPS"). For the reasons set forth below, this Court finds that Zavala is in custody for purposes of jurisdiction, but that his release moots his habeas claims challenging his detention and that his substantive due process challenge to ISAP lacks merit. The petition, along with his request for injunctive relief, are dismissed and denied.

## II. BACKGROUND

Zavala filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on September 22, 2026, challenging his detention. *See* ECF No. 1. On September 28, 2026, he was

released from custody on his own recognizance, but required to enroll in ISAP. *See* ECF No. 3. On October 7, 2026, this Court entered an Order granting the parties time to discuss what impact Zavala's release from custody and concomitant enrollment in ISAP have on the underlying petition and, if necessary, to file an amended petition. *See* ECF No. 7.

Zavala filed an Amended Petition for Writ of Habeas Corpus on October 21, 2026. *See* Am. Pet., ECF No. 8. The Amended Petition explains that Zavala, a native and citizen of El Salvador, entered the United States without inspection in 1996. *See* Am. Pet ¶ 1. In 1997, an immigration judge entered a final order of removal against Zavala, but he was never physically removed from the United States and the Department of Homeland Security ("DHS") took no steps to enforce the order. *Id.* at ¶ 2. In 2000, Zavala was granted Temporary Protected Status ("TPS") based on the designation of his native country, El Salvador, and has continuously maintained TPS since. *Id.* at ¶ 3.

On September 20, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Zavala at his home based on the twenty-nine year old removal order. *Id.* at ¶ 5. He was detained until September 28, 2026, when Respondents released Zavala from physical detention, but enrolled him in ISAP, which requires him to download the SmartLink Application on his phone that tracks his location twenty-four hours a day, and imposed mandatory reporting requirements (submit to random check-ins which provide biometric information to GEO Group) and geographic travel restrictions. *Id.* at ¶¶ 7, 9. In light of these restrictions, Zavala contends that he remains in Respondents' custody within the meaning of 28 U.S.C. § 2241(c)(3). *Id.* at ¶¶ 7, 48-49. On October 1, 2026, United States Citizenship and Immigration Services ("USCIS") denied his request to re-register for TPS, which is currently on appeal. *Id.* at ¶ 8. Zavala asserts that his TPS benefits are extended during the pendency of his appeal, *see id.* (citing 8 C.F.R. §

244.14(b)(3)), which bars both his removal and his detention on the basis of his immigration status, *see id.* at ¶¶ 6, 50-55 (citing 8 U.S.C. § 1254a(a)(1)(A), (d)(4)). He claims that: (1) his "detention" violates the Immigration and Nationality Act ("INA") because he has TPS, *see id.* at ¶¶ 76-79 (citing 8 U.S.C. § 1254a); (2)-(3) his "detention" violates Fifth Amendment due process, *see id.* at ¶¶ 56-68, 80-90;[1] and (4) his "continuing detention" through enrollment in ISAP while he holds TPS violates the *Accardi* doctrine, *see id.* at ¶¶ 69-75 and page 24 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). For relief, Zavala asks this Court to order that he be released from ISAP and from all electronic monitoring and related conditions; to enjoin his re-detention and removal while his TPS remains in effect; and, in the alternative, to require that any future restraint on his liberty be preceded by notice and a hearing before a neutral decisionmaker at which the government bears the burden of proof. *Id.* at ¶ 12.

The Government filed a Response in Opposition to the Amended Petition for Writ of Habeas Corpus on October 28, 2026. *See* Opp., ECF No. 9. The Government argues: (1) this Court lacks jurisdiction because the supervision requirements do not impose a significant restraint on liberty for purposes of the habeas corpus "in-custody" requirement given their temporary, minimally invasive nature; (2) there is no violation of the INA or the *Accardi* doctrine because ICE maintains the statutory, regulatory, and discretionary authority to impose supervision requirements on noncitizens with final orders of removal; and (3) the supervision requirements comport with due process. *See id.* at 4.

---

[1] Zavala's due process arguments in Section III are based solely on his alleged detention. *See* Am. Pet. ¶¶ 56-68. He makes only one reference to ISAP in his two due process counts. *See id.* ¶ 85 ("Petitioner's enrollment in ISAP violates the substantive component of the Due Process Clause because it is not rationally related to any legitimate purpose and lacks any statutory authorization.").

## III. LEGAL STANDARDS

### A. Habeas Corpus, 28 U.S.C. § 2241 – Review of Applicable Law

The habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear cases brought by immigration detainees that are being held "in custody in violation of the Constitution or laws . . . of the United States." *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); 28 U.S.C. § 2241(c)(3). "It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). "Although there is no statutory exhaustion requirement attached to § 2241, [the courts] have consistently applied an exhaustion requirement to claims brought under § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

### B. Substantive Due Process – Review of Applicable Law

The "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted). "In the immigration context, the Court must determine whether Plaintiffs' detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose." *Gudino v. Lowe*, 785 F. Supp. 3d 27, 42 (M.D. Pa. 2025) (internal quotation marks omitted).

### C. Temporary Protected Status, 8 U.S.C. § 1254a – Review of Applicable Law

Immigration law established the TPS program to provide "humanitarian relief to foreign nationals in the United States who come from specified countries." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). *See also Nat'l TPS All. v. Noem*, 166 F.4th 739, 749-50 (9th Cir. 2026) (describing the history of the TPS statute). "The Government may designate a country for the

program when it is beset by especially bad or dangerous conditions" and that "country's citizens, if already present in the United States, may then obtain TPS[, which] protects them from removal and authorizes them to work here for as long as the TPS designation lasts." *Sanchez*, 593 U.S. at 412.; *See also* 8 U.S.C. § 1254a(a)(1). TPS status also protects them from being "detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). TPS benefits "remain in effect" during the pendency of an appeal regarding TPS. *See* 8 C.F.R. § 244.10; *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 U.S. Dist. LEXIS 38207, at *10 (M.D. Pa. Feb. 25, 2026).

**D. Statutory Interpretation – Review of Applicable Law**

"[W]hen the meaning of a statute [i]s at issue, the judicial role [i]s to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 369 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 515 (1840)). *See also Morocho v. Warden Phila. FDC*, 189 F.4th 287 (3d Cir. 2026). The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [The] inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. "It is well established that when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (cleaned up).

### E. Injunctive Relief – Review of Applicable Law

A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). In the immigration context, unlawful detention, threatened removal, and separation from family members may constitute irreparable injury. *See Gudino*, 785 F. Supp. 3d at 46-47. "[I]t is in the public's interest that individuals subject to immigration proceedings be afforded sound process and not be subjected to unlawful detention." *Id.* at 48.

## IV. ANALYSIS

### A. Zavala is "in custody" for jurisdictional purposes over the habeas petition.

For the reasons set forth by Judge Murphy in *Kegel v. Rose*, which is incorporated herein, this Court has jurisdiction because Zavala is "in custody" pursuant to 28 U.S.C. § 2241. *See* 837 F. Supp. 3d 680, 685-89 (E.D. Pa. 2026).[2]

---

[2] In *Kegel*, the Court explained that "'the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody[; rather,] there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Kegel*, 837 F. Supp. 3d at 686-87 (quoting *Jones v. Cunningham*, 371 U.S. 236, 239 (1963) (internal citation omitted)). In the absence of Supreme Court or Third Circuit law addressing "whether a noncitizen released on conditions while his removal proceedings are pending is considered in custody," the *Kegel* Court examined decisions from other district courts answering this question, as well as Third Circuit law that generally "confronted the limits of habeas jurisdiction." *See id.* at 686-87. The Court determined that Kegel, who like Zavala here was supervised under ISAP but not required to wear an ankle monitor, was in custody because his supervision was "(1) severe, (2) immediate, and (3) not shared by the public generally." *See id.* at 688 (citing *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015) ("The Supreme Court has distilled a three-part

**B. Zavala is not "detained" for purposes of the TPS statute.**

Apparently relying on the in-custody analysis for jurisdictional purposes, counsel for Zavala asserts that Zavala is "detained" in violation of the TPS statute and that his "detention" violates due process and the *Accardi* doctrine. *See* Am. Pet. ¶¶ 50-90 and page 24. Zavala's suggestion that he is detained is unfounded. The dictionary defines "detain" as: "to hold or keep in or as if in custody." *See* https://www.merriam-webster.com/dictionary/detain (last accessed November 10, 2026). Custody is defined as "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority." *See* https://www.merriam-webster.com/dictionary/custody (last accessed November 10, 2026). Although Zavala is subject to ISAP conditions, he is not in the physical custody of any other person. In fact, the Amended Petition acknowledges that "on September 28, 2026, Respondents released Mr. Zavala from physical detention." Am. Pet. ¶ 7. His habeas claims, with the limited exception in Count Two discussed below, are dependent on his ongoing detention. Because Zavala is no longer detained, his claims are moot and are dismissed. *See Jean-Francois v. Soto*, No. 26-0522, 2026 U.S. Dist. LEXIS 16681, at *2-4 (D.N.J. Jan. 29, 2026) (dismissing the habeas petition as moot where the TPS petitioner had been released from custody and concluding that it lacked authority to hear the

---

test for deciding what constitutes custody: the restraints on the petitioner must be (1) severe, (2) immediate (i.e., not speculative), and (3) not shared by the public generally.")). The Court reasoned that Kegel could not leave Pennsylvania, New Jersey, and Delaware; had to report to the ISAP office in King of Prussia every eight weeks; was required to take a photograph with the SmartLINK app every Monday between 10 AM and 12 PM in front of a white wall and consent to random location check-ins through SmartLINK; and that failure to comply with these policies could result in his return to detention. *See id.* at 688. Additionally, the Court rejected the Government's counterarguments, which are the same raised in the above-captioned case, as "unavailing." *See id.* at 688. *But see Duenas v. Otto*, No. 3:25-cv-467, 2026 U.S. Dist. LEXIS 159066, at *3 (W.D. Pa. July 15, 2026) (finding that the petitioner's release from immigration custody eliminated the "case or controversy" required for jurisdiction).

petitioner's challenge to his reporting requirements because TPS does not prohibit removal proceedings).

**C. Zavala's required enrollment in ISAP does not violate due process.[3]**

In a single paragraph in Count Two, Zavala asserts that his "enrollment in ISAP violates the substantive component of the Due Process Clause because it is not rationally related to any legitimate purpose and lacks any statutory authorization." *See* Am. Pet. ¶ 85.

"Under federal regulations, after ICE issues a noncitizen a final order of removal, ICE 'may release [the noncitizen] under an order of supervision under § 241.4 if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen]'s removal in the reasonably foreseeable future.'" *Gudino*, 2026 U.S. Dist. LEXIS 38207, at *13 (quoting 8 C.F.R. § 241.13). However, if the noncitizen "does not leave or is not removed within the removal period [90 days, he] *shall* be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (emphasis added). "The regulations shall include provisions requiring the alien—

> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

*Id.* Also, "the order of supervision may have conditions of release and any noncitizen 'released under an order of supervision or other conditions of release who violates the conditions of

---

[3] This section assumes that the Court has jurisdiction to decide the habeas claims not dependent on Zavala's detention status despite his release from custody. *But see Jean-Francois*, 2026 U.S. Dist. LEXIS 16681, at *2-4 (concluding that it lacked authority to hear the petitioner's challenge to his reporting requirements because TPS does not prohibit removal proceedings).

release may be returned to custody.'" *Gudino*, 2026 U.S. Dist. LEXIS 38207, at *13 (quoting 8 C.F.R. § 241.4(l)(1)).

Zavala's suggestion that ISAP lacks statutory authority is therefore incorrect. Additionally, given ICE's authority to impose supervision conditions and its continued interest in supervising a noncitizen with a final order of removal, Zavala's ISAP enrollment does not violate substantive due process. *See Amador Molina v. Wilson*, No. 26cv11382, 2026 U.S. Dist. LEXIS 261091, at *7 (D.N.J. Nov. 13, 2026) (finding that the immigration petitioner's reporting requirements (electronic, in-person, and SmartLINK reporting), scheduled home visits, and geographic travel restrictions, even though imposed without an individualized assessment, do "not, standing alone, establish a substantive due process violation [because] ICE possesses statutory authority to impose reasonable conditions of immigration parole (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(d)).

**D. Zavala's TPS does not change the analysis.**

Zavala's TPS does not change ICE's ability to impose conditions of supervision (ISAP enrollment). The TPS statute provides:

> In the case of an alien who is a national of a foreign state designated under subsection (b) . . . and who meets the requirements of subsection (c), the Attorney General, in accordance with this section—
>
> (A) may grant the alien temporary protected status in the United States and shall not remove the alien from the United States during the period in which such status is in effect, and
>
> (B) shall authorize the alien to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit.

8 U.S.C. § 1254a(a)(1). It further states, "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status

in the United States." 8 U.S.C. § 1254a(d)(4). "During a period in which an alien is granted temporary protected status under this section—

> (1) the alien shall not be considered to be permanently residing in the United States under color of law;
> (2) the alien may be deemed ineligible for public assistance by a State (as defined in section 101(a)(36) [8 USCS § 1101(a)(36)]) or any political subdivision thereof which furnishes such assistance;
> (3) the alien may travel abroad with the prior consent of the Attorney General; and
> (4) for purposes of adjustment of status under section 245 [8 USCS § 1255] and change of status under section 248 [8 USCS § 1258], the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

8 U.S.C. § 1254a(f) (Benefits and status during period of temporary protected status).

The language of the TPS statute is plain and unambiguous. *See De Leon-Ochoa v. AG of the United States*, 622 F.3d 341, 354 (3d Cir. 2010) (referring to the TPS statute as "unambiguous"); *Jean-Francois*, 2026 U.S. Dist. LEXIS 16681, at *4 (finding that the TPS "statute is clear"). Consistent with the plain language of the statute, a recipient of TPS is granted the following protections: (1) no removal/deportation; (2) employment authorization; (3) travel abroad with prior consent; and (4) no detention on the basis of immigration status. *See* 8 U.S.C. § 1254a(f); *J.G.J. v. Sage*, No. 3:26-cv-706, 2026 U.S. Dist. LEXIS 73298, at *9 (M.D. Pa. Apr. 3, 2026) (TPS "status, once granted, provides a noncitizen with certain benefits for as long as the TPS designation lasts. Those benefits include a statutory prohibition on the noncitizen's removal and detention." (quotations omitted)). Nevertheless, "removal proceedings may continue and a noncitizen 'may even be ordered removed while under TPS, though the order remains inexecutable so long as the [noncitizen] remains a TPS beneficiary.'" *Geincharles v. Rokosky*, No. 26-cv-00150, 2026 U.S. Dist. LEXIS 20827, at *4 (D.N.J. Feb. 2, 2026) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1054 (5th Cir. 2022)). Further, "TPS statutes and regulations only list non-detention on the basis of immigration status as a benefit of TPS and do not list a general

protection against non-detention as a benefit of TPS." *See Gudino*, 2026 U.S. Dist. LEXIS 38207, at *12. There is also nothing in the TPS statute that precludes ISAP enrollment or any other condition of supervision. *See generally* 8 U.S.C. § 1254a; *Accord Dassas v. Mordant*, No. 2:26-cv-247, 2026 U.S. Dist. LEXIS 49564, at *2-3 (M.D. Fla. Mar. 9, 2026) (determining that a TPS applicant has only the benefits listed in the statute, which "does not preclude electronic monitoring").

**E. The request for injunctive relief is denied and dismissed.**

To the extent Zavala asks to be released from ISAP and from all electronic monitoring and related conditions, the request is denied because he has not shown a likelihood of success on the merits of his claims. *See* Section IV(C) *supra*. Because his remaining habeas claims are dependent on his detention, they also have no likelihood of success.[4] *See Guevara v. Lowe*, No. 3:26-cv-01845, 2026 U.S. Dist. LEXIS 215637, at *3-4 (M.D. Pa. Sep. 23, 2026) (denying the request for injunctive relief because the petitioner, who had been released from custody, failed to demonstrate any likelihood of success on the merits of his claims challenging his detention). His request for injunctive relief is therefore denied and dismissed. *See Duenas*, 2026 U.S. Dist. LEXIS 159066, at *3 (finding that the petitioner's release from immigration custody mooted the habeas motion challenging said detention and the request for injunctive relief).

---

[4] Zavala's request that this Court "require that *any* future restraint on his liberty be preceded by notice and a hearing before a neutral decisionmaker at which the government bears the burden of proof," *see* Am. Pet. ¶ 12 (emphasis added), is also overly broad. *See Posey v. Brittain*, No. 3:25-CV-847, 2026 U.S. Dist. LEXIS 93660, at *9 (M.D. Pa. Apr. 29, 2026) (concluding that the plaintiff's "request to enjoin 'all unprofessional conduct' is simply too broad to obtain injunctive relief"). *See also Gudino*, 2026 U.S. Dist. LEXIS 38207, at *12 ("TPS statutes and regulations only list non-detention on the basis of immigration status as a benefit of TPS and do not list a general protection against non-detention as a benefit of TPS.").

## V. CONCLUSION

Zavala was detained by immigration officials at the time the above-captioned case was initiated, but has since been released. His required enrollment in ISAP is sufficient to satisfy the "in custody" requirement for purposes of jurisdiction under 28 U.S.C. § 2241, but does not amount to "detention" under the TPS statute. Zavala's habeas claims are largely based on his detention and are therefore dismissed as moot. To the extent that a limited portion of one of his claims is not dependent on his detention status, it is denied for lack of merit. Because the petition is moot and Zavala has not shown a likelihood of success on any claim, his request for injunctive relief is dismissed and denied.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge